WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Luis Randulfo Parrado,<br><br>    Petitioner,<br><br>v.<br><br>David Shinn, et al.,<br><br>    Respondents. | No. CV-19-00478-TUC-LCK<br><br>**ORDER** |

Petitioner Luis Parrado has filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254. Before the Court are the Petition (Doc. 1), Respondents' Answer (Doc. 10-12), and Parrado's Reply (Doc. 13). The parties have consented to Magistrate Judge jurisdiction. (Doc. 15.)

## **FACTUAL AND PROCEDURAL BACKGROUND**

Parrado was convicted in the Pima County Superior Court of two counts each of kidnapping, aggravated assault, armed robbery, aggravated robbery, and possession of a narcotic drug, as well as one count each of kidnapping of a minor under fifteen, aggravated assault of a minor under fifteen, first degree burglary, and possession of drug paraphernalia. (Doc. 10, Ex. B.) Parrado was sentenced on February 2, 2015, to a prison term totaling 19.5 years. (*Id.*)

Parrado appealed and the Arizona Court of Appeals granted review but denied relief. (*Id.*, Exs. C-E.) The Arizona Court of Appeals summarized the facts in support of Parrado's convictions:

> In December 2015, Parrado and another man entered the apartment of K., C., and their three-year-old son. They beat C. repeatedly with pistols and herded the family into the bedroom; while Parrado stayed in the living room, his companion entered the bedroom and pointed a pistol at the family and threatened to kill them. The attackers fled, taking several items from the apartment, when Parrado yelled that police were nearby. Both were arrested a short time later, and K. identified Parrado as one of her attackers just after his arrest. Parrado was carrying oxycodone pills and a baggie containing cocaine base when he was arrested.

(*Id.*, Ex. E ¶ 2.)

Parrado filed a Notice of Post-Conviction Relief (PCR), followed by a PCR Petition and Supplement thereto. (*Id.*, Exs. G, I, J.) The PCR court denied relief on the merits. (*Id.*, Ex. K.) Parrado appealed and the Arizona Court of Appeals granted review. (*Id.*, Exs. L, M.) The court granted relief and remanded for an evidentiary hearing on Parrado's claim that counsel was ineffective with respect to a plea offer; the court denied relief as to his other claims. (*Id.*, Ex. M.)

After a hearing (*id.*, Exs. O, U), the PCR court denied relief on Parrado's claim of ineffective assistance of counsel (IAC) (*id.*, Ex. P). The appellate court affirmed that decision. (*Id.*, Ex. R.) The Arizona Supreme Court denied review. (*Id.*, Ex. S.)

## DISCUSSION

Parrado pled one claim, in which he alleges trial counsel was ineffective for failing to adequately advise him of a plea offer. Respondents conceded that Parrado properly exhausted this claim and did not contend it is untimely. (Doc. 10 at 4, 7.)

**Legal Standards for Relief Under the AEDPA**

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) created a "highly deferential standard for evaluating state-court rulings' . . . demand[ing] that state-court decisions be given the benefit of the doubt." *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (per curiam) (quoting *Lindh v. Murphy*, 521 U.S. 320, 333 n.7 (1997)). Under the AEDPA, a petitioner is not entitled to habeas relief on any claim "adjudicated on the merits" by the state court unless that adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). The last relevant state court decision is the last reasoned state decision regarding a claim. *Barker v. Fleming*, 423 F.3d 1085, 1091 (9th Cir. 2005) (citing *Ylst v. Nunnemaker*, 501 U.S. 797, 803-04 (1991)); *Insyxiengmay v. Morgan*, 403 F.3d 657, 664 (9th Cir. 2005).

"The threshold test under AEDPA is whether [the petitioner] seeks to apply a rule of law that was clearly established at the time his state-court conviction became final." *Williams v. Taylor*, 529 U.S. 362, 390 (2000). Therefore, to assess a claim under subsection (d)(1), the Court must first identify the "clearly established Federal law," if any, that governs the sufficiency of the claims on habeas review. "Clearly established" federal law consists of the holdings of the Supreme Court at the time the petitioner's state court conviction became final. *Williams*, 529 U.S. at 365; *see Carey v. Musladin*, 549 U.S. 70, 74 (2006).

The Court has explained that a state court decision is "contrary to" the Supreme Court's clearly established precedents, under § 2254(d)(1), if the decision applies a rule that contradicts the governing law set forth in those precedents, thereby reaching a conclusion opposite to that reached by the Supreme Court on a matter of law, or if it confronts a set of facts that is materially indistinguishable from a decision of the Supreme Court but reaches a different result. *Williams*, 529 U.S. at 405-06; *see Early v. Packer*, 537 U.S. 3, 8 (2002) (per curiam). Under the "unreasonable application" prong of § 2254(d)(1), a federal habeas court may grant relief where a state court "identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular . . . case" or "unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend the

principle to a new context where it should apply." *Williams*, 529 U.S. at 407. For a federal court to find a state court's application of Supreme Court precedent "unreasonable," the petitioner must show that the state court's decision was not merely incorrect or erroneous, but "objectively unreasonable." *Id.* at 409; *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007); *Visciotti*, 537 U.S. at 25. "A state court's determination that a claim lacks merit precludes federal habeas relief so long as '"fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).

Under the standard set forth in § 2254(d)(2), habeas relief is available only if the state court decision was based on an unreasonable determination of the facts. *Miller-El v. Dretke*, 545 U.S. 231, 240 (2005) (Miller-El II). In considering a challenge under § 2254(d)(2), state court factual determinations are presumed to be correct, and a petitioner bears the "burden of rebutting this presumption by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *Landrigan*, 550 U.S. at 473-74; *Miller-El II*, 545 U.S. at 240.

**Analysis**

Parrado alleges trial counsel was ineffective in failing to provide sufficient information for him to evaluate a plea deal before rejecting it. The PCR court made the following findings and denied this claim:

> Petitioner testified his trial counsel never told him, and he never inquired, as to the potential range of sentence he was facing if convicted of the numerous charges. Petitioner also testified that the first time he had heard about the DNA or fingerprint evidence introduced by the State was at the time of trial. Furthermore, although Petitioner does recall a conversation with his trial counsel about the plea, he testified that she gave him no information regarding the evidence to be presented in the case or the possible sentences if he took his case to trial. He testified she only told him that he was looking at up to twenty-one (21) years under the plea, but that he needn't worry because she had "the case in the bag." The Court finds Petitioner's testimony on these issues is not credible.
>
> Trial counsel testified that she had no recollection of providing Petitioner with a copy of February 2014 plea, but that her practice was to provide a copy to her client by hand delivery through her investigator. Trial counsel had no doubts that she would have discussed the plea with Petitioner, and would have encouraged him to take the plea because the State had a very strong case due to the DNA and fingerprint evidence. Trial counsel did recall

> from her conversations concerning the plea, that Petitioner was only interested in a probation available plea. . . .
>
> The evidence presented showed Ms. Berry had an approximately 40 minute interaction with Petitioner at the jail on March 13, 2014. This was about one month after the State extended its February 2014 plea offer. Petitioner states the only thing trial counsel communicated to him during this approximately 40 minute conversation was that she has the case in the bag and that he was looking at a maximum of twenty-one (21) years. Petitioner does not indicate what else they spoke about during the approximately 40 minute conversation, but Petitioner maintains he was never told any of the facts of his case or the potential sentence if he were convicted at trial.
>
> Trial counsel does not specifically recall talking to Petitioner about the plea, but that she most likely would have done so during the March 2014 jail visit. She does recollect telling Petitioner the State's case was strong, and she would have encouraged him to take the plea. She recalls some discussion with Petitioner about the possibility of the victims not appearing for trial. Because of this possibility, trial counsel recalls Petitioner was only interested in a probation available plea on the drug charges and didn't want to plea to anything regarding the home invasion.
>
> . . . .
>
> THE COURT FINDS that Petitioner has failed to establish by a preponderance of the evidence that trial counsel's performance fell below an objective standard of reasonableness. *See* Rule 32.8, Ariz. R. Crim. Proc. The Court further finds that trial counsel provided Petitioner the information necessary to allow him to make an informed decision whether to accept or reject the plea, and that Petitioner, in fact, rejected the plea offer.

(Doc. 10, Ex. P at 2-3.)

IAC claims are governed by *Strickland v. Washington*, 466 U.S. 668 (1984). To prevail under *Strickland*, a petitioner must show that counsel's representation fell below an objective standard of reasonableness and that the deficiency prejudiced the defense. *Id.* at 687-88. The inquiry under *Strickland* is highly deferential, and "every effort [must] be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.* at 689. Thus, to satisfy *Strickland's* first prong, deficient performance, a defendant must overcome "the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* A petitioner must affirmatively prove prejudice. *Id.* at 693. To demonstrate prejudice, he "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would

have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

In deciding whether to accept a plea offer, "defendants are 'entitled to the effective assistance of competent counsel.'" *Lafler v. Cooper*, 566 U.S. 156, 162-63, 168 (2012) (quoting *McMann v. Richardson*, 397 U.S. 759, 771 (1970)); *see also Missouri v. Frye*, 566 U.S. 134, 147 (2012) (finding counsel's conduct is deficient if she fails to communicate an offered plea to the defendant). If a defendant is denied effective assistance in evaluating an offered plea, "prejudice can be shown if loss of the plea opportunity led to a trial resulting in a conviction on more serious charges or the imposition of a more severe sentence." *Lafler*, 566 U.S. at 168.

Parrado argues the PCR court's fact finding was unreasonable pursuant to § 2254(d)(2) and the legal ruling was an unreasonable application of *Strickland* under § 2254(d)(1). The Court first looks at the state court factual findings. The PCR court found not credible Parrado's testimony that counsel had the case "in the bag," and that counsel did not inform him of either the term of imprisonment he faced if convicted at trial or that the state had inculpatory DNA and fingerprint evidence. The PCR court also found that trial counsel informed Parrado the state had a strong case and encouraged him to take the plea deal, and counsel provided sufficient information for Parrado to meaningfully evaluate the plea offer.

Parrado argued the PCR court's findings were unreasonable for numerous reasons. First, Parrado argued, "[t]rial counsel was not at the jail on the days or at the time it would have been possible to have explained and provided the plea to Petitioner within the court hearing time frame." (Doc. 13 at 5 ¶ 9.) The Court does not know what Parrado means by "the court hearing time frame." Regardless, at the evidentiary hearing it was established that the prosecutor offered the plea in February 2014 and counsel met with Parrado at the jail for 45 minutes in March 2014. (Doc. 10, Ex. U at 18-19.) Parrado acknowledged that counsel informed him the prosecution had offered a plea. (*Id.* at 28, 32, 33.)

Next, Parrado argued that counsel testified to having no specific recollection of giving Parrado a copy of the plea offer or discussing it with him. (Doc. 13 at 4 ¶ 1.) Parrado testified he did not see the plea offer until the PCR proceedings. (Doc. 11, Ex. U at 27.) And, counsel did not document in her file that she gave him the plea offer or what advice she provided about it. (*Id.* at 13.) However, the absence of written corroboration does not undermine the testimony of trial counsel. She testified that she probably would have had her investigator deliver the plea agreement, and counsel visited Parrado in jail several weeks after the plea was offered. (*Id.* at 15-16.) Counsel had no doubt that she communicated with Parrado about the plea, because she believed the State had a strong case and she would have encouraged Parrado to accept a deal that reduced his exposure. (*Id.* at 10-11, 18, 20.) She had a specific memory of Parrado informing her that the only plea he would accept was one for probation on the drug charges. (*Id.* at 10, 18, 20-22.) Critically, Parrado acknowledged that counsel informed him that the prosecution had offered a plea capping his prison exposure at 21 years. (*Id.* at 28, 32, 33.)

Also, Parrado argued that, as he testified, he did not know about the DNA or fingerprint evidence to be used at trial. (Doc. 13 at 5 ¶¶ 6, 8.) This testimony is contrary to that offered by counsel. Additionally, Parrado's testimony contained several unbelievable statements: during the 40-minute meeting with counsel he did not ask any questions about the plea and learned only that it had a maximum of 21 years prison time; although counsel's investigator met with Parrado seven times, he knew nothing about his case or the evidence against him; and, despite testifying that counsel provided him no factual information about the plea offer, his case, or the sentence he was facing at trial (and that he did not ask about these topics), he testified to asking counsel to request severance of the drug charges because he wanted a probation plea for those charges. (Doc. 10, Ex. U at 32-34, 36-38, 40.) Looking at the entirety of the testimony, the PCR court's rejection of Parrado's testimony as not credible was not objectively unreasonable.

Finally, Parrado argued that counsel did not recall that a witness deposition had been taken in the case, and she did not explain to Parrado that a deposition could be used at trial if the witness did not appear. (Doc. 13 at 5 ¶¶ 2-4.) This argument arises because counsel testified that she discussed with Parrado a possibility that one of the victims would not appear at trial because she was from Mexico. (Doc. 10, Ex. U at 20-21, 35.) She believed that Parrado was relying upon that possibility and, for that reason, did not want to enter a plea as to any of the counts tied to the home invasion. (*Id.* at 20-21.) Here, Parrado appears to be arguing that counsel failed to properly advise him that witnesses could be deposed prior to trial; therefore, he should not have relied on the possibility that they would fail to appear at trial as a basis to avoid conviction. This contention is undermined by Parrado's own evidentiary hearing testimony when he stated that he had no idea there was an issue regarding victim testimony and he did not rely upon the possibility that they would not appear for trial. (*Id.* at 35-36.) Because Parrado did not decline the plea offer based on a belief (erroneous or otherwise) that he might not be convicted due to the absence of victim testimony, counsel's advice on that topic is not relevant.[1]

Having reviewed the evidentiary hearing testimony and the arguments set forth by Parrado, this Court finds the PCR court's fact finding was not objectively unreasonable. Therefore, Parrado is not entitled to relief based on § 2254(d)(2). Because Parrado has not offered any evidence to overcome those factual and credibility findings, this Court defers to them. *See Sophanthavong v. Palmateer*, 378 F.3d 859, 867 (9th Cir. 2004) (requiring federal courts to defer to state court credibility findings made after an evidentiary hearing); 28 U.S.C. § 2254(e)(1).

Next, the Court evaluates Parrado's contention that the PCR court's decision was an unreasonable application of Supreme Court law. This Court accepts as true the following

---

[1] Parrado argued that counsel failed to explain that the victim had been deposed and the deposition could be used at trial if the victim did not appear. (Doc. 13 at 5 ¶¶ 2-3.) Review of the docket reveals that no depositions were sought until August 2014, months after the plea deal was offered.

- 8 -

findings by the PCR court: trial counsel informed Parrado there was a plea offer and the state had a strong case, and she encouraged him to take the plea deal; and this provided sufficient information for Parrado to meaningfully evaluate the plea offer. Additionally, this Court defers to the PCR court's conclusion that Parrado's testimony to the contrary was not credible. Because counsel told Parrado about the plea and offered advice about the strength of the state's case, counsel's conduct was not objectively unreasonable. At a minimum, the Arizona Court of Appeals' denial of this claim was not objectively unreasonable. *See Cheney v. Washington*, 614 F.3d 987, 994-95 (2010) (noting that review of a decision under *Strickland* and the AEDPA is "doubly deferential" because courts must be highly deferential in evaluating counsel's performance).

As a final matter, Petitioner relies upon *State v. Donald*, 10 P.3d 1193, 298 Ariz. 406 (Ct. App. 2000), to argue that ineffective assistance of counsel is established any time a *Donald* hearing is not held prior to the rejection of a plea offer in an Arizona trial court.

> A *Donald* hearing is a pre-trial hearing where a defendant is informed of any outstanding plea offer and the consequences of conviction so that a record of the defendant's rejection of the plea offer can be made to guard against any 'late, frivolous, or fabricated claims' of ineffective assistance of counsel 'after a trial leading to conviction with resulting harsh consequences.'

*Matwyuk v. Ryan*, No. CV-18-08299-PCT-JAT, 2020 WL 3026487, at *3-4 (D. Ariz. June 5, 2020) (quoting *State v. Mendoza*, 455 P.3d 705, 715 ¶ 18, 248 Ariz. 6, 16 ¶ 18 (Ct. App. 2019)), *certificate of appealability denied sub nom. Matwyuk v. Attorney Gen. for Arizona*, No. 20-16316, 2020 WL 7873086 (9th Cir. Nov. 23, 2020). A *Donald* hearing is not necessary for counsel to provide competent representation; rather, it creates a record that a defendant has been informed sufficiently about a plea. Further, a *Donald* hearing is an Arizona state court construct and the absence of one in Parrado's case does not demonstrate ineffective assistance of counsel under clearly established Supreme Court law. *Id.* at 4; *see also Phillips v. Arizona*, No. CV-14-2809-PHX-GMS-ESW, 2016 WL 8487964, at *5

(Sept. 22, 2016), *report and recommendation adopted*, 2017 WL 977519 (D. Ariz. Mar. 14, 2017).

## **CERTIFICATE OF APPEALABILITY**

Pursuant to Rule 11(a) of the Rules Governing Section 2254 Cases, this Court must issue or deny a certificate of appealability (COA) at the time it issues a final order adverse to the applicant. A COA may issue only when the petitioner "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This showing can be established by demonstrating that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner" or that the issues were "adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (citing *Barefoot v. Estelle*, 463 U.S. 880, 893 & n.4 (1983)). The Court finds that reasonable jurists would not find this Court's ruling debatable. Therefore, a COA will not issue.

Accordingly,

**IT IS ORDERED** that the Petition for Writ of Habeas Corpus is **DISMISSED**.

**IT IS FURTHER ORDERED** that the Clerk of Court should enter judgment and close this case.

**IT IS FURTHER ORDERED** that, pursuant to Rule 11 of the Rules Governing Section 2254 Cases, in the event Petitioner files an appeal, the Court denies issuance of a certificate of appealability.

Dated this 25th day of March, 2021.

_____
Honorable Lynnette C. Kimmins
United States Magistrate Judge